UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV12232-PBS

_____
                                                )
ADRIAN McCRAY,                                  )
                                                )
            Plaintiff,                          )
                                                )
v.                                              )
                                                )
H&R BLOCK EASTERN ENTERPRISES, INC.,            )
  and LINDA MURPHY,                             )
                                                )
            Defendants.                         )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 56.1

of the District of Massachusetts, Defendants H&R Block Eastern Enterprises, Inc. ("Block") and

Linda Murphy ("Murphy") submit this Memorandum of Law in support of their Motion for

Summary Judgment.

## INTRODUCTION

The plaintiff's claims in this case are a moving target.  In his Complaint, plaintiff Adrian

McCray ("McCray"), a former human resources manager at Block, alleges that (1) he was

discriminated against on the basis of his race (African-American) in violation of state anti-

discrimination law; (2) he was retaliated against for filing a Complaint with the Massachusetts

Commission Against Discrimination ("MCAD") alleging race discrimination; and (3) he was not

restored to his position following a leave of absence pursuant to the Family and Medical Leave

Act ("FMLA") and ultimately discharged for taking that leave.  Since filing his Complaint,

however, McCray has abandoned his race discrimination claim.  In the current iteration of the

case, McCray claims that his supervisors retaliated against him for a panoply of unrelated reasons -- (1) because he filed a complaint alleging race discrimination with the MCAD; (2) because he came to a different conclusion than management about the results of a sexual orientation harassment investigation he conducted as part of his job; (3) because he took FMLA leave for a back condition; (4) because he asked for FMLA leave for a foot condition and related elective surgery; and (5) because he disagreed with his supervisor's decision to transfer the assistant of another employee who was on FMLA leave.

McCray's claims fail as a matter of law. McCray cannot succeed on his Chapter 151B and FMLA retaliation claims for many of the same reasons: (1) he failed to exhaust his administrative remedies as required by Chapter 151B with respect to certain allegedly protected conduct; (2) he cannot demonstrate that much of the conduct he claims to have engaged in amounts to protected activity under either Chapter 151B or the FMLA; and (3) he cannot produce any evidence demonstrating a causal link between his alleged protected activity under either statute and his termination. Rather, the undisputed evidence indicates that Block began addressing the performance and attitude issues that precipitated McCray's termination well before he filed his MCAD Charge or requested any FMLA leave.

## STATEMENT OF FACTS

The defendants refer this Court to their Statement of Undisputed Material Facts, incorporated herein by reference.[1]

## ARGUMENT

A movant for summary judgment "bears the initial burden of demonstrating that there are no genuine issues of material fact for trial" and may satisfy this burden by demonstrating an

---

[1] For purposes of this motion, the defendants have accepted as undisputed McCray's version of certain material facts. The defendants reserve the right to contest at trial any facts stated as undisputed in this motion.

absence of evidence to support the nonmoving party's case. Hinchey v. NYNEX Corp., 144

F.3d 134, 140 (1st Cir. 1998). See also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Here, McCray cannot offer evidence sufficient to establish the essential elements of his claims,

and judgment should enter in favor of the defendants.

## I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON McCRAY'S RACE CLAIM BECAUSE McCRAY HAS ABANDONED THAT CLAIM.

This Court should grant summary judgment on McCray's race discrimination claim

because he is no longer pursuing that claim. McCray clearly testified in his deposition that he

has abandoned his race discrimination claim. (Defendants' Statement of Undisputed Material

Facts ("Statement") ¶ 80.) Consequently, this Court should grant summary judgment in favor of

the defendants on that claim. See Providence and Worcester R.R. Co. v. Chevron USA, Inc.,

1990 WL 85506 at *3 (D. Mass. Jun. 15, 1990) (granting summary judgment on plaintiff's

abandoned claim). See also Singleton v. City of Newburgh, 1 F.Supp.2d 306, 312 (S.D.N.Y.)

(deeming plaintiffs' claim "abandoned" and granting summary judgment where claim was

alleged in the complaint but "not raised elsewhere in the record").[2]

## II.    McCRAY CANNOT PROVE THE ESSENTIAL ELEMENTS OF HIS RETALIATION CLAIM UNDER M.G.L. CHAPTER 151B.

To establish a retaliation claim under M.G.L. c. 151B, the Massachusetts anti-

discrimination statute, McCray must show: (1) that he engaged in protected conduct; (2) that he

suffered some adverse employment action; and (3) that a causal connection exists between the

protected conduct and the adverse action. See Mole v. Univ. of Massachusetts, 442 Mass. 582,

591-92 (2004). McCray points to two actions allegedly protected by Chapter 151B that he

---

[2] McCray's abandonment of his race discrimination claim is no surprise as he could not produce a shred of evidence to support it. Indeed, Gill, the supervisor who hired, disciplined, and fired McCray is an African-American woman. (Statement ¶ 3.) Even had McCray not abandoned this claim, it would be subject to summary disposition for complete failure of proof. See Celotex, 477 U.S. at 325.

claims led to the scrutiny of his work performance by Block management and, ultimately, to the termination of his employment.  Specifically, McCray points to (1) his disagreement with Block management about the handling of an investigation of an employee complaint against a district manager, Rick Bartlett,[3] and (2) his filing of a Charge of Discrimination at the MCAD.  His retaliation claims based on both of these incidents fail.

> ### A.    McCray's Claim of Harassment and Retaliatory Discharge for Disagreeing with Murphy's Actions in Connection with an Employee Investigation Fails.

Although he did not allege the relevant facts in his Complaint, McCray now claims that the defendants retaliated against him and ultimately terminated his employment because he disagreed with actions Murphy took with respect to an investigation into an employee complaint regarding Bartlett.[4]  (Statement ¶¶ 18-24.)  McCray cannot succeed on this claim for two reasons.  First, McCray has not exhausted his administrative remedies with respect to this claim, as required by Chapter 151B.  Second, McCray has not produced sufficient evidence to establish a prima facie case of retaliation.

---

[3] McCray claims that he was retaliated against for voicing his disagreement with the handling of another employee relation issue involving an individual named David Gross.  (Statement ¶¶ 25-28.)  However, the retaliation claim with regard to the Gross situation falls under the FMLA rather than Chapter 151B.

[4] In his deposition, McCray also testified that he disagreed with two other decisions made by Murphy. First, he stated that Murphy decided not to hire a job applicant because she was afraid that the applicant would have issues with childcare.  (Statement ¶ 32.)  This allegation, which is not in McCray's Complaint, is not supported by any detail.  At his deposition, where he raised this incident for the first time, McCray could not remember the name of the job applicant, the name of the person who was hired instead of the job applicant, or the approximate date of the alleged incident.  (Id.)  This lack of concrete evidence precludes any meaningful response by the defendants and is, by itself, grounds on which this Court should grant summary judgment.  See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).  See also Sowell, 941 F.2d 32, 35-36 (1st Cir. 1991) (affirming grant of summary judgment where plaintiff failed to produce concrete evidence supporting an essential element of his claim).  Second, McCray claims that he disagreed with Murphy's decision to document the performance problems of a Block employee, Michelle Lamberg.  (Statement ¶¶ 29-31.)  McCray admits, however, that Murphy targeted Lamberg because "[s]he didn't like her" and did not think that "she was a good manager" and that he never voiced his disagreement with Murphy's handling of the Lamberg situation to Murphy or any other supervisor.  (Id. at ¶¶ 31, 33.)

In both of the above-described incidents, McCray's conduct did not constitute protected activity because his disagreement with Murphy's decisions had nothing to do with the relevant individuals' membership in a protected class under Chapter 151B.  Further, these factual scenarios cannot support a retaliation claim for the same reasons that the Bartlett scenario cannot:  (1) McCray's disagreement with Murphy's decisions was part of his job as human resources manager and (2) McCray cannot establish a causal connection between his disagreement with Murphy and any adverse employment action.

1.    *McCray's Claim Regarding the Bartlett Investigation Is Beyond the Scope of the MCAD Charges He Filed.*

McCray's retaliation claim regarding the Bartlett investigation is barred because McCray did not exhaust his administrative remedies with respect to that claim. Chapter 151B requires an employee to file an administrative charge as a prerequisite to commencing a civil action for retaliation under the statute. See M.G.L. c. 151B, §§ 5-9. The requirement of filing an administrative charge serves the dual purposes of (1) providing the administrative agency with the opportunity to investigate and conciliate the claim and (2) providing notice to the defendant(s) of the potential suit. See Carter v. Commissioner of Correction, 43 Mass. App. Ct. 212, 217 (1997). See also Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). As the First Circuit has noted, those purposes "would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." See Lattimore, 99 F.3d at 464. Although the administrative charge must be construed liberally where, as here, the employee appeared pro se before the administrative agency, "[e]ven a pro se complainant is required to describe the essential nature of the claim and to identify the core facts on which it rests." See id. (citation omitted). This requirement stems from the "fundamental policy concern that the charge give adequate notice to government investigators and the employer of the nature of a plaintiff's claims." See Luciano v. Coca-Cola Enterprises, Inc., 2004 WL 1922137 at *2 (D. Mass. Aug. 30, 2004).

In his first MCAD Charge, McCray plainly alleged that the defendants discriminated against him on the basis of his race. (Statement ¶ 48.) In his second MCAD Charge, McCray alleged that the defendants "harassed" and ultimately terminated his employment in retaliation for filing the first MCAD Charge. (Id. at ¶ 77.) Nowhere in either of those Charges did McCray allege retaliation for voicing his disagreement with the defendants' handling of the Bartlett

situation.   (Id. at ¶¶ 48, 77.)  As such, McCray is precluded from raising that claim before this

Court.[5]   See Lattimore, 99 F.3d at 464 (pro se plaintiff precluded from pursuing harassment

claim not asserted in his MCAD complaint because claim was based on facts "qualitatively and

temporally" distinct from those underlying the claims raised before the MCAD); Luciano, 2004

WL 1922137 at *1 -*4 (plaintiff's hostile work environment claim barred as administrative

charge would not alert a reasonable investigator or the employer that plaintiff was attempting to

assert that claim).  See also Cosme v. The Salvation Army, 284 F.Supp.2d 229, 241 (D. Mass.

2003) (Young, J.).

It is of no import that McCray raised the Bartlett incidents in a rebuttal filed as part of his

first MCAD action because, consistent with routine MCAD practice, the defendants never

received a copy of that rebuttal.  Here, the defendants learned *for the first time* that McCray had

raised the Bartlett incident before the MCAD when they received McCray's initial disclosures in

this federal court action.  (Statement ¶ 48, n.4.)  Consequently, allowing McCray's rebuttal to

serve as the predicate for this federal court action would be fundamentally inconsistent with a

key purpose of Chapter 151B's charge-filing requirement -- *giving employers notice of the*

*claims against them.*  See Carter,43 Mass. App. Ct. at 217; Lattimore, 99 F.3d at 464 ("[I]n

employment discrimination cases, the scope of the civil complaint is limited by the *charge* filed

with the EEOC and the investigation which can reasonably be expected to grow out of that

*charge*") (citations omitted) (emphasis added).  Accord DiLuca v. Communications and Power

Industries, Inc., 2003 WL 21781564 (Mass. Super. Jul. 25, 2003).[6]  This is especially true given

---

[5] McCray also did not raise the other two decisions he now contests -- i.e., Murphy's decision not to hire a
job applicant who might have childcare issues and her decision to document Lamberg's performance failures -- in
either of his MCAD Charges.

[6] The defendants are aware that another judge in this District has ruled that an employee exhausts his
administrative remedies by raising a claim in an MCAD rebuttal.  See Ianetta v. Putnam Investments, Inc., 142
F.Supp.2d 131, 135 (D. Mass. 2001) (Tauro, J.).  In Ianetta, the employer moved to dismiss employee's sex
discrimination claim on the grounds that the employee had not exhausted his administrative remedies.  Id.  The

that, after filing his rebuttal in his first MCAD action, McCray filed a *second* MCAD Charge, in which he easily could have incorporated his allegations regarding Bartlett or any other employee relations issue with which he disagreed.

2.    *McCray's Statements Regarding Bartlett Are Not "Protected Activity."*

McCray's statements to his supervisors about the Bartlett investigation, even if accepted as true, do not constitute protected activity under M.G.L. c. 151B, § 4(4) -- Chapter 151B's anti-retaliation provision -- because McCray made them as part of his job as human resources manager. Several federal courts, including the First Circuit and the District of Puerto Rico, have held that employees do not engage in protected activity under various employment statutes simply by doing their jobs.[7] These courts have held that "[t]o engage in protected activity, the employee must step outside of his or her role of representing the company." Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir. 2004). An employee can show that he stepped outside of his role by demonstrating that he "took some action against a policy and that the action was based on a reasonable belief that the employer engaged in conduct contrary to the [underlying statute]." Id.

Further, under this line of cases, an employee does not step out of his normal role unless and until he takes actions that are both adverse to the company *and* not part of his job responsibilities. See id. at 100, 102-03 (no protected activity under federal wage act where

---

employee argued that he properly raised the claim by referencing it in his MCAD charge and by specifically stating it in his rebuttal filed with the MCAD. Id. Judge Tauro held that the employee had exhausted his administrative remedies because, even "[i]f the MCAD complaint was insufficient to alert the agency of his sex-discrimination claim, his Rebuttal certainly provided such notice." Id. While the Ianetta decision explicitly takes into account one of the dual purposes of Chapter 151B's charge-filing requirement (providing the administrative agency with notice), it fails to consider the other purpose (providing the employer with notice of the claims against it). As a result, the defendants respectfully disagree with the holding in Ianetta.

[7] Massachusetts courts generally follow Title VII jurisprudence in interpreting Chapter 151B retaliation claims, and there is no reason to think that Massachusetts courts would analyze the issue any differently than the federal courts. See, e.g. Wynn & Wynn, P.C. v. Massachusetts Comm'n Against Discrim., 431 Mass. 655, 669 n.29 (2000) (overruled on other grounds by Stonehill College v. Massachusetts Comm'n Against Discrim., 441 Mass. 549 (2004)); Bain v. City of Springfield, 424 Mass. 758, 766 (1997).

manager alerted supervisors to potential violation of act in an effort to help the company avoid liability); Vidal v. Ramallo Bros. Printing, Inc., 380 F.Supp.2d 60, 62 (D.P.R. 2005) (dismissal of Title VII retaliation claim where employee, the company's human resources director, did not step outside of his normal role when he notified management of his intention to investigate them for sexual harassment, because employee's actions were consistent with the company's interests and part of his job responsibilities).  See also McKenzie v. Romberg's, Inc., 94 F.3d 1478, 1485-86 (10th Cir.1996).  These well-reasoned cases make clear that simply voicing concerns about potential wrongdoing by an employee that may or may not amount to a statutory violation does not constitute protected activity *when it is an employee's job to do so*.  Rather, an employee must go further and actually take an action adverse to his employer.

The evidence is undeniable that McCray did not take any such action here.  As McCray fully acknowledges, conducting investigations of employee complaints and documenting the results of those investigations fell squarely within his job responsibilities.  (Statement ¶ 4.)  So too did his alleged statements to Gill and Watson about the Bartlett investigation.  McCray's deposition testimony regarding the Bartlett situation is anything but clear, but even giving McCray the benefit of every doubt, his testimony establishes merely that he told management officials at Block that Murphy had demanded that he reach a conclusion contrary to his personal conclusion, namely that Bartlett had not engaged in unlawful discrimination or harassment. [8]

---

[8] McCray's testimony in this regard is unclear and inconsistent.  In his deposition, McCray testified at one point that he complained to Gill and Watson about Murphy's comments about the investigation, at another point that he did not know whether he called Gill, Watson or an anonymous hotline, and at yet another point that he complained to Gill and Watson via email.  (Statement ¶ 22.)  Further, although McCray testified that he, at Murphy's prompting, wrote the investigative report differently than he believed was appropriate, he could not point to any specific portion of the report that he would have written differently had Murphy not become involved.  (Id. at ¶ 23.)  McCray's inconsistent testimony, by itself, is insufficient to support his retaliation claim.  See, e.g., Perez v. Volvo Car Corp., 247 F.3d 303, 318 (1st Cir. 2001) ("Where . . . the nonmovant has the burden of proof on a critical issue and the evidence that she proffers in opposition to summary judgment is so vague that she could not prevail at trial, the motion must be granted").  Further, given that Murphy, Gill and Watson all deny McCray's allegations in their entirety (Statement ¶ 20, n. 2), a reasonable factfinder could not find in McCray's favor on this claim.  See

In making such statements, McCray was performing an essential function of his job -- engaging in a dialogue with his supervisors in human resources about the manner in which his regional manager handled a particular personnel issue.  The evidence is undisputed that Block considered such communication to be part of the role of a human resources manager and actively took steps to keep its human resources managers independent from operational managers. (Statement ¶¶ 5, 7-10.)  Indeed, Block used the Clarify computer program -- to which operational managers like Murphy were intentionally denied access -- as a way of fostering confidential, open communication between regional human resources managers and their supervisors in the human resources department.  (Id. at ¶¶ 8-10.)  Block also used the dual reporting structure -- in which regional human resources managers like McCray reported directly to Gill and only had a "dotted line" relationship to operational managers -- to maintain the independence of the human resources department.  (Id. at ¶¶ 5-7.)  It cannot be right that a human resources manager like McCray engages in protected activity just by virtue of *doing his job*.

Further, the undisputed evidence makes clear that McCray did not step out of his role as a human resources manager by taking any actions adverse to Block.  Block, like many companies, employs human resources professionals in part to ensure that its managers treat employees fairly and make proper personnel decisions, and, as a result, human resources employees acting squarely in the company's interest are sometimes at odds with managers about personnel practices.  Indeed, McCray's alleged conversations with his human resources supervisors about the Bartlett investigation were completely consistent with Block's interest in thoroughly addressing complaints of discrimination.  As dictated by his job, McCray allegedly expressed his

---

Kaiser v. Armstrong World Indus., Inc., 872 F.2d 512, 518 (1st Cir. 1989) ("Summary judgment is appropriate even in the face of conflicting evidence if the latter is insufficient to support a jury verdict in the nonmovant's favor . . . .").

opinion about the results of that investigation and took no further action when his supervisors

disagreed with that conclusion.   Consequently, at no point during the Bartlett investigation did

McCray engage in protected activity.

3.    *There is No Causal Connection between McCray's Statements about the Bartlett Investigation and Either His Termination or the Defendants' Scrutiny of His Work.*

Even assuming arguendo that McCray's statements about Block's handling of the Bartlett

investigation constitute protected activity, his prima facie case fails because he cannot establish a

causal link between these statements and his termination.[9]   McCray's alleged disagreement with

Murphy about the Bartlett investigation took place in April 2002, but his termination did not

occur until January of the following year, approximately eight months later.  (Statement ¶¶ 18,

74-75.)  McCray cannot provide a plausible explanation for why the defendants would begin

monitoring his work performance more closely in November 2002 and choose to fire him in

January 2003 for conversations that happened in the spring of 2002.  Given the long time lag and

McCray's intervening performance and attitude issues (see Section II(B), infra), any inference of

causation is unwarranted.

**B.    There is No Causal Link Between the MCAD Filing and Either the Scrutiny of McCray's Work or His Termination.**

Although McCray's filing of a complaint at the MCAD undoubtedly is protected conduct

under Chapter 151B, he cannot establish a retaliation claim based on this conduct because he has

failed to produce any evidence demonstrating a causal link between the filing of the Charge and

his termination.  McCray relies only on the timing of events to establish a causal link.  That

---

[9] McCray also claims that the defendants retaliated against him by giving him a negative performance evaluation in May 2002.  His negative performance evaluation did not constitute an adverse employment action sufficient to make out a prima facie case of retaliation because it did not affect the salary, grade or other objective terms of his employment.  See MacCormack v. Boston Edison Co., 423 Mass. 652, 663-64 (1996).  Cf. Bello v. Karl Storz Endovision, Inc., 2005 WL 911299 at *4 (Mass. Super. Mar. 16, 2005) ("A disciplinary warning, with no consequence on the conditions of employment is not an adverse employment action in and of itself").

simply is not enough.  See, e.g., Mole, 442 Mass. at 592.  "Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude towards his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint."  Id.  (citing Mesnick v. General Elec. Co., 950 F.2d 816, 828 (1st Cir. 1992)).  Admittedly, close temporal proximity between the protected activity and adverse action, *coupled with the fact that an employee was performing his job satisfactorily before the adverse action,* may be sufficient to allow an inference of causation. See id.; Ritchie v. Dep't of State Police, 60 Mass. App. Ct. 655, 665-66 (2004).  However, given the long history of poor performance by McCray and his outrageous behavior toward the end of his employment, no such inference is warranted here.

Here, McCray fully acknowledges that Block began communicating with him about his performance and attendance problems in May 2002, more than six months before he filed his MCAD Charge.  (Statement ¶¶ 11-13.)  The undisputed evidence demonstrates that McCray's supervisors began to notice his performance deficiencies almost immediately after his hire and that they consistently addressed these deficiencies, which intensified throughout his employment, from May 2002 through his termination in January 2003.  Soon after McCray began working at Block, his supervisors noticed that he failed to produce written reports on human resources issues, failed to record personnel issues in the Clarify computer system, and had difficulty comprehending the subtleties of employee relations issues.  (Id. at ¶ 11.)  Beginning very early in his employment, McCray was also tardy or absent on many occasions and did not provide his supervisors adequate notice.  (Id.)  McCray himself admits the validity of several of Block's criticisms of his performance.  (Id. at ¶ 13.)

Block first formally addressed McCray's performance and attendance issues in his first performance review in May 2002. (Id. at ¶ 12.) Later in May, Block gave McCray a written warning for failing to notify his supervisors that he would be absent from work on a particular day and failing to ensure that certain employment contracts for which he was responsible were executed. (Id. at ¶ 16.) McCray's performance failed to improve. (Id. at ¶ 34.) Block next issued him a "development plan" in August 2002, nearly four months before McCray filed his Charge at the MCAD. (Id.) Among other things, that plan required McCray to be a team player, better take direction from supervisors and report absences on a timely basis. (Id. at ¶ 35.) The plan also contemplated that Gill, Murphy, and McCray would have a meeting on November 30, 2002 to discuss McCray's progress and improvement. (Id.) Even after receiving the development plan, McCray's performance problems persisted. (Id. at ¶ 37.) In mid-November 2002, Block received complaints about training sessions McCray had conducted, and Murphy spoke to McCray about those complaints. (Id.) All of this conduct occurred *before* McCray filed his MCAD complaint.

After McCray filed a complaint at the MCAD, his performance and attendance continued to deteriorate, and Block continued down the already well-trodden path of addressing those problems. Although the November 30 meeting contemplated in the development plan was rescheduled because of McCray's FMLA leave, Gill and Murphy met with McCray on December 9, 2002 to inform him that he had not made sufficient progress on the development plan and that he still needed to improve his performance. (Id. at ¶ 50.)[10] In January 2003, McCray continued to be absent on numerous occasions without excuse. (Id. at ¶¶ 62, 74.)

_____

[10] McCray filed his MCAD Charge on December 4, before returning to work from his FMLA leave. (Statement ¶ 48.) Notably, Block did not become aware of McCray's MCAD Charge until receiving it on December 10, 2002, the day after Murphy and Gill met with McCray to discuss his performance under the development plan. (Id. at ¶ 49.)

McCray failed to attend a required training in Kansas City and later called in sick to work for four consecutive days.  (Id. at ¶¶ 65-74.)  In response, Murphy, after consulting with Gill, called McCray at home and, when McCray informed her that he would not be coming to work that day, she told him his employment was terminated.  (Id. at ¶ 74.)

Massachusetts courts routinely refuse to infer causation, and thus grant summary judgment in favor of the employer, where, as here, undisputed evidence demonstrates that the employer was dissatisfied with the employee's work performance *before* the employee engaged in protected activity.  See, e.g., Mole, 442 Mass. at 593 (no causal connection where performance problems began nearly two years before alleged protected activity).  See also Dziamba v. Warner & Stackpole LLP, 56 Mass. App. Ct. 397, 407 (2002); Williams v. Brigham & Women's Hosp., Inc., 2002 WL 532979 at **5 (Mass. Super. Jan. 8, 2002).  This is true irrespective of how close in time the protected activity and adverse action occur.  In fact, in Mole, 442 Mass. 592, the Massachusetts Supreme Judicial Court unambiguously held that "[w]here . . . adverse employment actions or other problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation."[11]  See also Collison v. Sun Microsystems, 2004 WL 2750849 at *4 (Mass. Super. Nov. 17, 2004) ("timing alone is not sufficient" to establish causation, and employee must also show that she was a satisfactory employee"); Williams, 2002 WL 532979 at **5 (refusing to infer causation where employee was fired within a week of the date employer learned she had filed a Charge with the MCAD).  Because Block began addressing McCray's

---

[11] In Mole, the Court found that the employee could not prove a causal connection sufficient to support a retaliation claim for two independently sufficient reasons:  (1) because the pattern of adverse employment action against the employee predated his protected activity; and (2) because the adverse actions underlying the retaliation claim occurred years after the employee engaged in protected activity.  Mole, 442 Mass. at 594.

performance and attendance problems more than half a year before he filed his discrimination complaint, this Court may not infer causation.

### C. Block's Alleged Scrutiny of His Work Is Not an Adverse Action.

McCray cannot demonstrate that Block's alleged scrutiny of his work in November 2002 through January 2003 amounted to an adverse action, and, consequently, he cannot premise his Chapter 151B retaliation claim on that conduct. Just because McCray alleges that he was "harassed" by Murphy does not make it so. An action qualifies as an adverse employment action only if it disadvantages the employee in respect to salary, level, or other objective terms and conditions of employment. See McCormack v. Boston Edison Co., 423 Mass. 652, 663 (1996). Alleged "harassment" can constitute an adverse employment action only if it is sufficiently severe. See, e.g., Dahms v. Cognex Corp., 2001 WL 1771994 at *4 (Mass. Super 2001) (assuming that an adverse employment action had occurred where employer gave fraudulent performance reviews, restricted employee's workplace access, made humiliating remarks, and attacked the employee's character). Here, the only specific conduct McCray points to in support of his claim of harassment is that (1) Block no longer allowed him to work a special Friday work schedule that it had granted to him; (2) Murphy asked him why he kept the door to his office shut; (3) Murphy asked him to tell her when he arrived and departed from the office, and (4) Murphy generally expressed dissatisfaction with his activities. (Statement ¶ 60.) Such conduct is not severe by any standard and thus does not amount to adverse employment action.

### III. McCRAY CANNOT PROVE THE ESSENTIAL ELEMENTS OF HIS FMLA CLAIMS.

Consistent with the rest of his case, McCray's FMLA claims are multi-faceted, confused and entirely without legal merit. In addition, as with his Chapter 151B claims, McCray's FMLA claim looks entirely different today from the way in which he pleaded it in his Complaint. In the

Complaint, McCray alleged both that Block discharged him in retaliation for taking FMLA leave and refused to restore him to his position at the end of his FMLA leave. He now also claims that the defendants discharged him in retaliation for requesting a second leave for a different medical condition and that the defendants retaliated against him for voicing his disagreement with what he believed to be a violation of another employee's FMLA rights. All of his claims fail.

**A.  McCray Was Restored to His Position after Taking FMLA Leave.**

During his employment at Block, McCray took only one approved FMLA leave — the full-time and intermittent leave he took in November and December 2002 for back injuries suffered in a car accident. The Family and Medical Leave Act, 29 U.S.C. § 2614(a)(1), requires that an employer restore an employee to the same job position, or its equivalent, after he returns from FMLA leave. See also 29 C.F.R. §§ 825.100(c). It is undisputed that Block did exactly that after McCray returned to work following his FMLA leave for his back condition. McCray's full-time FMLA leave of approximately two weeks ended on December 2, 2002, and Block took him back to work in the same position on intermittent leave. (Statement ¶¶ 45, 53.) McCray remained on intermittent leave until he stated that he could return to work full-time on December 23, 2002. (Id. at ¶ 56.) McCray remained in the same full-time position until his termination on January 20, 2003. (Id. at ¶ 50.)

**B.  McCray Did Not Engage in Protected Activity and Block's Reason for Monitoring His Work and Terminating Him Was Lawful.**

To make out a prima facie case of retaliation, McCray must first show (1) that he availed himself of a protected right under the FMLA; (2) that he was adversely affected by an employment decision; and (3) that there is a causal connection between his protected activity and Block's adverse employment action. See 29 U.S.C. §§ 2615(a)(1), 2615(a)(2); Hodgens v. General Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1999). Here, with respect to his second

requested leave and his statements about the Gross situation, McCray cannot establish that he availed himself of an FMLA-protected right.  Moreover, even if the Court accepts that McCray engaged in protected conduct under the FMLA, his claim fails because he cannot point to any evidence that the defendants' proffered reasons for terminating his employment -- i.e., his poor performance, bad attitude, and failure to report to work at a time when he was not on FMLA leave -- are a pretext for retaliation.  Instead, as discussed above, the undisputed evidence unambiguously shows that the defendants terminated McCray's employment for performance and attendance problems that arose, and that they addressed, long before he ever requested or took any FMLA leave.[12]

     1.     *McCray's Requested Leave for a Foot Condition and Related Surgery Was Not Protected by the FMLA.*

An employee can prove a prima facie case of retaliation based on the taking or requesting of leave only if he is able to demonstrate that the leave was mandated by the FMLA.  See Hodgens, 144 F.3d at 161-65 (employee's retaliation claim could not survive summary judgment unless a rational trier of fact could conclude that he was entitled to at least a portion of his leave under the FMLA).  See also  Wheeler v. Pioneer Developmental Servs., 349 F.Supp.2d 158, 164 (D. Mass. 2004) (to prevail on FMLA claim, plaintiff must establish, among other prerequisites, that he qualified for FMLA benefits and that he gave his employer appropriate notice).  McCray cannot make such a showing with respect to the leave he requested in January 2003 for a foot condition and surgery.  From January 7-10, 2003, McCray was absent from work for "foot problems" for which he ultimately requested FMLA leave.  (Statement ¶ 62.)  Block conditionally granted that leave pending receipt of medical certification.  (Id.)  McCray never presented the required medical certification (Id. at ¶ 63), and, as a result, he did not qualify for

---

[12] Further, as discussed in Section II(C), the defendants' alleged "harassment" of McCray does not constitute an adverse action sufficient to support a retaliation claim of any kind.

FMLA leave.  See 29 U.S.C. § 2613 (allowing employers to require that employees' serious

health conditions be certified by their health care providers).  On January 14, 2003, McCray

requested that he be granted medical leave following a surgery for an "intractable plantar

keratoma" (or, a callus on the bottom of the foot) scheduled for January 23, 2003.  (Statement ¶¶

63-64.)  McCray was also not entitled to that requested leave under the FMLA.

The FMLA and corresponding regulations make clear that an employee must provide his

employer with at least thirty days' advance notice before FMLA leave is to begin if the need for

leave is foreseeable based on a planned medical treatment for a serious health condition.  See 29

U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 805.302(a).  Further, when planning a medical treatment, an

employee must consult with his employer and "make a reasonable effort to schedule the leave so

as not to disrupt unduly the employer's operations, subject to the approval of the health care

provider . . ."  29 U.S.C. § 2612(e)(2)(A); 29 C.F.R. § 805.302(e).  McCray did not comply with

any of these mandates.[13]  McCray refused Block's request that he reschedule his surgery outside

of tax season, and stated that he would take the leave even if Block did not grant it.[14]  (Statement

¶ 70.)  Block was thus under no obligation to grant either of McCray's requested leaves in

January 2003 because (1) McCray did not give Block adequate notice of the surgery and (2)

McCray did not consult with Block about the scheduling of his surgery.  Consequently,

McCray's requests do not constitute protected activity within the meaning of the FMLA's

retaliation provision.  See Wheeler, 349 F.Supp.2d at 164 (to succeed on FMLA retaliation

claim, employee must prove that he gave adequate notice of his leave).

---

[13] McCray ultimately did not have the surgery until June 9, 2003, nearly five months after it was initially scheduled, rendering meritless any argument that this was an urgent medical condition.  (Statement ¶ 69, n.5.)

[14] Indeed, even though the requested leave was for an undefined period after a surgery scheduled to occur on January 23, McCray failed to return to work after January 14, when he told Murphy he was going to take the leave whether Block granted it or not.  (Statement ¶¶ 70, 74.)  He admitted that his absences from January 14 through January 20 were not FMLA-related.  (Id. at ¶ 74.)

2.    *McCray's Statements about Gross's Assistant Are Not Protected Activity.*

McCray's alleged disagreement with Murphy regarding her decision to transfer Gross's assistant while he was out of the office also does not constitute protected activity under the FMLA.  As discussed in connection with McCray's Chapter 151B retaliation claim, McCray's statements about Gross were made as part of his job as human resources manager and thus do not qualify as protected conduct.  Flagging potentially problematic personnel decisions fell squarely within the ambit of McCray's job responsibilities.  (Statement ¶ 4.)  Further, McCray's statements about Gross do not constitute protected activity because the undisputed evidence demonstrates (1) that Murphy's decision to transfer Gross's assistant did not violate the FMLA and (2) that McCray's belief to the contrary was unreasonable.  Accepting McCray's testimony to be true, it establishes merely that Murphy sent Gross's assistant for further training while Gross was on FMLA leave.  (Id. at ¶ 27.)  Murphy's testimony, which McCray cannot dispute, establishes that she replaced Gross's assistant with a more seasoned manager during Gross's absence.  (Id.)  Such conduct quite clearly does not amount to an FMLA violation.[15]

3.    *McCray Cannot Demonstrate That Block's Proffered Reasons for His Termination Are a Pretext for Retaliation.*

Even assuming that McCray could make out a prima facie case of FMLA retaliation, his claim nonetheless fails because he cannot demonstrate that the defendants' proffered reasons for firing him or scrutinizing his work are a pretext for retaliation.[16]  Block asserts the same reasons

---

[15] Moreover, any reasonable person in McCray's position would have recognized that, regardless of Murphy's intent in transferring Gross's assistant, her actions could not possibly have violated the FMLA unless she communicated to Gross that she had removed his assistant from the office and took additional steps to force him to return to work.  McCray has not produced evidence indicating that this occurred, and, as a result, he has failed to establish the reasonableness of his belief that the defendants violated the FMLA with respect to Gross.

[16] The defendants do not concede that McCray can establish a causal connection between his assertion of FMLA-protected rights and his termination and reserve the right to argue otherwise should the accompanying motion be denied and the case proceed to trial.   For the purposes of this Memorandum, the defendants rely on Section III(B)(2) to demonstrate that McCray has failed to present evidence demonstrating a causal link sufficient to support his prima facie case.

today for firing McCray as it did in his termination letter:  poor attitude, poor work performance,

insubordination and attendance problems, which culminated in McCray's failure to report to

work without medical documentation at a time when he was not on approved leave.  (Statement ¶

75.)  McCray has offered no evidence from which this Court may conclude that those reasons

are a pretext for retaliation and, on this claim too, appears to rely on nothing more than the

timing of events to establish his case.  Here too, however, the timing and sequence of events do

not support an inference of improper conduct.

       As discussed in detail above, McCray's performance problems were substantial and

Block began addressing them as early as May 2002, well before McCray took or requested any

FMLA leave.  In the FMLA context, that fact is sufficient to defeat an inference of unlawful

conduct.  In Hodgens, 144 F.3d at 151, the First Circuit affirmed the District Court's grant of

summary judgment in favor of the employer on an employee's FMLA retaliation claim.  There,

the employee was discharged as part of a reduction in force ("RIF") four months after taking

FMLA leave and claimed that his selection for the RIF was retaliatory.  Id. at 165.  The employer

asserted that the employee was selected for the RIF because of a long history of performance

problems and unprotected absences that began years before he took any FMLA leave.  Id. at 166,

171.  The employee attempted to demonstrate pretext by showing that his termination was based

in part on his "excessive absenteeism," which could conceivably include his FMLA-protected

leave.  Id. at 170.  The Court found that the employer's consideration of the employee's

excessive absenteeism as a factor in the selecting him for the RIF was not sufficient evidence of

retaliation to defeat summary judgment because, as here, many of the employee's absences were

not protected by the FMLA.  See id. at 172.  Ultimately, the Court sided with the employer and

held that, although both the employee and the employer had presented probative evidence on the

issue of pretext, the disagreement was so "one-sided" that a reasonable fact finder could not conclude that the employee's termination was retaliatory.  Id.

The situation here is indistinguishable.  McCray too was discharged because of a pattern of performance, attitude, and attendance problems that first manifested itself long before he took or requested FMLA leave or discussed Gross's situation with Murphy.   Further, as in Hodgens, many of McCray's absences were not protected by the FMLA, and Block's consideration of unprotected absences in its decision to terminate McCray was entirely proper.  While it is true that a longer period elapsed between the employee's leave and termination in Hodgens than in this case, that fact is of little significance because the undisputed evidence clearly demonstrates that McCray's termination was the natural end of a long road of employment problems rather than an isolated, unexplainable action.

Finally, it is worth noting that McCray is apparently asking this Court to conclude that the scrutiny of his work and the termination of his employment at Block were -- at the same time -- motivated by the defendants' anger at his allegedly protected conduct under Chapter 151B, a general anti-discrimination statute, and his exercise of rights under the FMLA, a leave statute. Further, he originally claimed Block's conduct was motivated by racial animus.   It strains credulity for this Court to conclude, especially in light of McCray's lengthy history of performance problems, that Block acted because he asserted his rights under each of these very different employment statutes.  Given the evidence before the Court, McCray's strained attempt to find a way to hang liability on Block must fail.

## **CONCLUSION**

For all of the foregoing reasons, summary judgment should enter in favor of the defendants and against the plaintiff, and the Complaint should be dismissed in its entirety.

Respectfully submitted,

H&R BLOCK EASTERN ENTERPRISES, INC.
and LINDA MURPHY,

By their attorneys,


/s/ Jennifer Belli
Adrienne M. Markham, BBO# 320740
Deborah Hesford DosSantos, BBO# 641185
Jennifer Belli, BBO # 660278
GOULSTON & STORRS,
  A Professional Corporation
400 Atlantic Avenue
Boston, Massachusetts  02110
(617) 482-1776

Dated:  November 15, 2005


### CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2005, I caused the foregoing Memorandum of Law to be served upon all counsel of record by first class mail.


/s/ Jennifer Belli
Jennifer Belli