UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*********************************************

ADRIAN MCCRAY,

　　　　Plaintiff

v.                                                          C.A. NO. 04-CV-12232-PBS

H&R BLOCK EASTERN ENTERPRISES, INC.
and LINDA MURPHY,

　　　　Defendants

*********************************************

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action for race discrimination, unlawful retaliation pursuant to G.L. c. 151B § 4, and for violation of the FMLA, 29 U.S. C. § 2601, et seq.[1]  The plaintiff, an HR manager for Block, alleges that in 2003, after more than 1 ½ years of employment with the defendant company, he was discharged in retaliation for his filing an MCAD complaint of discrimination against defendants.  At the time of his dismissal, plaintiff was suffering from a painful keratoma on his foot, was out of work under a doctor's care and scheduled for surgery.  He applied for and was granted FMLA leave, but was discharged nevertheless.  Defendants have filed a motion for summary judgment, on the grounds that the evidence does not show that plaintiff was discharged due to actions protected by the statutes in question.  The plaintiff opposes this motion.  In connection with his opposition to the motion, he relies upon his affidavit, filed herewith, and portions of the deposition of defendant, Linda Murphy.

---

[1] Plaintiff waives his claim for race discrimination, but is going forward on his claims of unlawful retaliation and violation of the FMLA.

The facts underlying this claim are referenced in plaintiff's Local Rule 56.1 statement. In summary, plaintiff alleges that there was no criticism of his job performance prior to May, 2002. In April of that year plaintiff investigated a complaint that Murphy's son-in-law (also a Block employee) was discriminating against one of his subordinates because of the subordinate's sexual orientation. The majority of employees interviewed supported the claims of discrimination, but Murphy, nevertheless, asked plaintiff to make sure that his report exonerated the son-in-law of discrimination. Plaintiff did so, but in no uncertain terms, told Murphy that in the future he would not write any more fraudulent reports which did not comport with his findings. At that time, Murphy implicitly threatened plaintiff, telling him that any time she wanted to make a case against an employee, she could do so, and get the employee fired.

Plaintiff also opposed Murphy on two other cases where he felt she was acting illegally, one where she made personnel moves calculated to cause an employee to not be able to take FMLA leave, and another where she targeted an older manager for termination after 27 year of employment, even though the manager was performing adequately, and plaintiff believed that the manager was the target of illegal age discrimination.

Shortly thereafter, defendants started criticizing plaintiff's performance, giving him a questionable evaluation in May 2002, and a warning in August, 2002. These actions and other issues, including a schedule change, caused plaintiff to file an MCAD complaint in December, 2002.[2]

---

[2] As noted, the first MCAD complaint, the December, 2002 one, listed race discrimination. In materials submitted to the MCAD, plaintiff also claimed retaliation, for opposing the discriminatory actions of Murphy.

Somewhere between January 6 and January 9 of 2003, plaintiff applied for FMLA leave, ostensibly for his foot condition, stating that he would be absent from work from January 6 to January 22, 2003.[3] This request for FMLA leave was approved on January 9, 2003 by Francine Gill.[4]

On January 14, 2003, plaintiff met with Linda Murphy. He showed her a doctor's note (ostensibly relative to his foot problem). She read the note and returned it to him, without keeping a copy. Murphy then gave plaintiff a warning. While plaintiff questioned the warning's validity, he was respectful and businesslike during the whole meeting. After the meeting, Murphy falsely reported to Gill and to others at Block that plaintiff had physically threatened her at the meeting and had been insubordinate.

Plaintiff called in sick for a few days after January 14. He still had sick days coming to him and his calling in such, violated no rules of Block's. Plaintiff was discharged on January 20, 2003, ostensibly for his insubordinate behavior on January 14 and for his calling in sick the few days after January 14.

In February, 2003, after his dismissal, plaintiff filed a second MCAD complaint, alleging that he was retaliated against for filing his first MCAD complaint and other actions.

Argument

I. Unlawful Retaliation – G.L. c. 151B

Defendants first argue (pages 4-10 of their memorandum) that plaintiffs claim that he was retaliated against because he opposed actions of Murphy is procedurally defective. First defendants argue that plaintiff did not exhaust his remedies as to his retaliation claim. This

---

[3] Plaintiff was scheduled for surgery on January 23, but had trouble standing on the foot, so put in for the additional leave.
[4] The approval, was as usual, was subject to medical certification.

-3-

argument is wholly erroneous, based on the faulty premise that plaintiff's first MCAD complaint is the operating complaint for the retaliation claim. On the contrary, it is plaintiff's second complaint, that governs that claim which is presently before the court.

The complaint plaintiff filed in Superior Court is wholly premised on the adverse action of plaintiff's dismissal, not any predismissal retaliatory acts, e.g. changing plaintiff's schedule. The court complaint (later removed to this court) does not make a claim for retaliation, other than the dismissal. There is no dispute that the second MCAD complaint, that of February 2003, is premised upon plaintiff's dismissal. So whether or not, plaintiff's first MCAD complaint (that of December 2002) mentions retaliation, is a moot point. Defendants muddy the waters by saying plaintiff is making a claim regarding the "Bartlett investigation." Plaintiff makes no such claim, but only cites that investigation as evidence of Murphy's retaliatory animus and conduct. Plaintiff's claim, involves his dismissal. That claim is rooted in the second MCAD complaint. Defendants have confused evidence of retaliation with claims for relief caused by retaliatory actions. Plaintiff seeks relief here for his dismissal, not for the petty retaliatory acts occurring prior to December, 2002.[5] See Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996), termination claims and pretermination harassment claims are distinct and separate claims.

Even if plaintiff were proceeding under his first MCAD complaint, defendants could still be wrong. Allegations raised in a rebuttal filed with the MCAD/EEOC are sufficient to preserve a claimant's remedies, whether they are investigated by the agency or not, Ianetta v. Putnam Investments, Inc., 142 F. Supp. 2nd 131 (D. Mass. 2001, J. Tauro).

---

[5] Evidence of earlier retaliatory actions should be admissible as background evidence. See Clifton v. MBTA, 62 Mass. App. Ct. 164 (2004), Swallow v. Feltzer Vineyards, Inc., 2002 WL2013309 (1st Cir. 2002).

-5-

Next, defendants argue that plaintiff's statements about Bartlett are not protected activity. Notwithstanding that plaintiff's primary filing of his first MCAD complaint (the basis for his termination claim) was clearly protected activity, defendants' argument is erroneous. When an employee, such as McCray, refuses to implement a discriminatory action or policy, he does step outside his role as a company employee, for purposes of protection against retaliation, EEOC v. HBE Corp., 135 F3d, 543, 554 (8th Cir. 1998). This is precisely what plaintiff did when he told Murphy point blank in April 2002 that he would not do any fraudulent investigations in the future, to suit her personal whims, as to which employees did nor did not unlawfully discriminate.

Next, defendants argue there is no causal connection between the filing of the first MCAD complaint and plaintiff's dismissal a month later. Plaintiff does not solely rely on the timing of the two events, the filing and his dismissal, but also upon the fact that the reasons for his termination were pretextual and unworthy of credence.

Plaintiff was discharged ostensibly because he allegedly raised his fist at Murphy and physically threatened her. While if true, such reason would be a non-retaliatory one, plaintiff's version of the events, which must be accepted here, is that no such threats and/or insubordination occurred, and Murphy fabricated those allegations in order to procure McCray's dismissal. Defendants concede (page 11) that if there was no cause for plaintiff's termination (coupled with the close temporal proximity of protected conduct, and adverse action), that would be sufficient to create an inference of retaliation. That is what we have here, as defendants' reasons for the termination are pretextual.

Murphy also claimed that plaintiff was terminated for calling in sick, but that explanation is pretextual as well, as plaintiff had such leave coming to him, he violated no policy by calling in sick, Block has no evidence that his conduct was fraudulent, Block had approved his FMLA leave for the period in question, and if plaintiff was somehow not allowed, as of January 14, to call in sick anymore, such a requirement, itself, could be deemed retaliatory.

While Mole v. University of Massachusetts, 442 Mass. 582 (2004), holds that an employee who engages in protected conduct is not automatically inoculated against later being dismissed for poor performance when performance issues, predated the retaliation, Mole is distinguishable. First of all, plaintiff was not dismissed for poor performance but for specific acts of alleged insubordination and calling in sick. These reasons for termination, being pretextual, in and of themselves, cannot be linked to concerns of the employer, legitimately raised prior to the protected conduct. Secondly, any warnings or improvement plans issued to plaintiff between May and December of 2002, can arguably be linked to plaintiff's protected conduct of April, 2002.

## II. FMLA Claim

Plaintiff is not claiming that Block violated his FMLA rights relative to his November-December 2002, FMLA leave, but rather that his FMLA rights were violated in connection with his January, 2003 leave for his foot condition.

Defendants first claim that plaintiff did not present medical certification for his January leave. First of all, Block claimed that the leave was denied solely because of the timing of the leave (tax season) and not because of a lack of certification. There is no evidence in the record that the leave was denied for such reason. Moreover, plaintiff was unable to present adequate certification, the note he delivered to Murphy on January 14 was not kept and made part of the

-6-

record, nor was plaintiff told he needed better certification. Had he been told the January 14 note was inadequate, he would have gotten another note. Instead, plaintiff was discharged, prior to certification becoming an issue.

Next, Block argues that plaintiff failed to give the required 30 days notice, if the need for leave was foreseeable. Plaintiff did not have to give 30 days notice under the statute. He was only obliged, 29 U.S.C. § 2612(e)(2)(B) to give such notice as was practicable. There is no evidence that he did not do so. Had plaintiff scheduled his surgery more than 30 days away, he would have gone deeper into tax season, affecting Block's interests adversely. Plaintiff, accordingly, made a reasonable effort (2612(e)(2)(A), to not disrupt Block's business. The foot condition, which made it painful to stand and which required surgery, was the proper subject for FMLA leave. Plaintiff denies telling Block he would take the leave, whether allowed or not.

Block goes on (page 18) to argue that there is no evidence of FMLA retaliation. But as in the 151B claim, Block's pretextual reasons for dismissing plaintiff e.g. false accusations of insubordination and calling in sick, made shortly after an exercise of protected rights, creates an inference of retaliation. While Block claims that it might consider unprotected absences in terminating plaintiff, there is no evidence that plaintiff violated any rules of Block when he might have called in sick for the flu, etc.

## CONCLUSION

For the foregoing reasons, the plaintiff asks that defendants' motion be denied and that this case go forward on the claims against defendants.

Date: 12-8-05

Adrian McCray
By his attorney,

Paul A. Manoff
47 Winter Street, #4
Boston, MA 02108
(617) 542-4620
BB0# 318220

## CERTIFICATE OF SERVICE

I, Paul A. Manoff, hereby certify that on December 8, 2005 I served a copy of the above document on the defendants by mailing a copy, first class, postage prepaid to Adrienne M. Markham, Goulston & Storrs, 400 Atlantic Avenue, Boston, MA 02110.

Date: 12-8-05

Paul A. Manoff

mccray\opsumjud