UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*************************************************
ADRIAN MCCRAY,                                  *
                                                *
        Plaintiff                               *
                                                *
v.                                              *   C.A. NO. 04-CV-12232-PBS
                                                *
H&R BLOCK EASTERN ENTERPRISES, INC.             *
and LINDA MURPHY,                               *
                                                *
        Defendants                              *
*************************************************

PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS
IN SUPPORT OF HIS CONTENTION THAT THERE IS A
GENUINE ISSUE TO BE TRIED

Pursuant to Local Rule 56.1, plaintiff submits the following additional material facts in support of his contention that there is a genuine issue to be tried.

I. Rebuttal of Defendant's Statement of Facts[1]

3. Plaintiff was hired by both defendant Linda Murphy and Francine Gill and interviewed with both of them (McCray affidavit, Paragraph 2).

7. Linda Murphy initiated disciplinary actions against plaintiff as well as others reporting to her in an operations capacity. Francine Gill did not have to sign off on any discipline against McCray or others, if it was an operations issue, and not a human resources performance issue (McCray affidavit, paragraph 3).

9. Defendant's HR managers were not required to enter any major employee relations issue in the clarify system. They had the option to do so, but the software had glitches and was not always operational. Plaintiff was never directly told that he was required to use it in all circumstances (McCray affidavit, paragraph 4).

---

[1] These paragraph numbers parallel the paragraph numbers used by defendants in their statement.

11. Defendants made no criticism of plaintiff's job performance, either oral or written, prior to May 1, 2002. He was not told he had to enter all issues in the clarify system nor did he fail to produce any required reports. He was not absent or tardy on numerous occasions with last minute notice. There is no documentation of any deficiencies during this period (August 2001-May, 2002) (McCray affidavit, paragraph 5).

12. The evaluation of May, 2002 came only after plaintiff protested what he thought were Murphy's illegal and discriminatory actions relative to the complaint of Paul Rogers (see below). At the time of McCray's protest, Ms. Murphy told him that any time she wanted to make a case against someone, she could and would, to get him fired. She also said that anyone who makes a negative statement about her son-in-law, she would get. Plaintiff contends that these comments, together with his record of fine job performance, prior to May, 2002, show that his May, 2002 evaluation was specious and was done to retaliate against him for his opposition to how Murphy handled the Rogers matter. Ms. Murphy signed the evaluation and had input into it. She was higher in the Block organization then was Gill (McCray evaluation, paragraph 6).

13. All plaintiff meant in his testimony was that he was not perfect and there is always room to improve. He performed his job in a more than adequate manner and exceeded his employer's expectations. He meant by "rigid and inflexible" that he followed the rules. He did not admit that he was not "meeting expectations" regarding his reports. He only indicated at his deposition that his reports could have contained more information. He did not concede that he was not following his instructions or Block's expectations (MoCray affidavit, paragraph 7).

14. Plaintiff told Ms. Gill and Ms. Murphy in advance that he was taking May 24 as an additional vacation day. They approved of his taking that day off (McCray affidavit, paragraph 8).

15. The contracts at issue were not due until plaintiff returned from vacation. He intended to work on them when he returned and did so when he returned from vacation. There was no work that he was required to complete before his vacation, that he failed to complete (McCray affidavit, paragraph 9).

16. Plaintiff was not given this warning until August, 2002, even though it has a date of May 31 on it. The warning was given to him in August by Murphy and Gill (McCray affidavit, paragraph 10).

18. The complaint was not merely that Bartlett failed to take appropriate action, but also that Bartlett directly discriminated against Rogers because of his (Rogers') sexual orientation (McCray affidavit, paragraph 11).

19. The majority of employees that plaintiff interviewed did support Rogers' claim (McCray affidavit, paragraph 12).

21. Murphy did tell plaintiff that his report should ensure that Bartlett was not found to have done anything wrong, but she never told McCray that she <u>believed</u> Bartlett (McCray affidavit, paragraph 13).

23. Had plaintiff not had the conversation with Ms. Murphy, previously referenced, he would have emphasized the testimony of different witnesses and written a different conclusion, which would have supported Rogers' complaint. After McCray wrote the report in a way to please Murphy, he told her in no uncertain terms that in the future he would not write any more fraudulent reports which did not comport with his findings (McCray affidavit, paragraph 14).

26. Murphy did not do anything to encourage Gross to take FMLA leave. It was plaintiff's idea that Gross take such leave. Murphy expressed concerns that Gross was missing work (McCray affidavit, paragraph 15).

27-28. Murphy at first did not send the assistant for additional training, nor did the assistant lack sufficient experience. Rather, Murphy transferred the assistant to a different district so that Gross would have to come back from leave. Plaintiff told Murphy that it was wrong to transfer the assistant, to force Gross to end his FMLA leave. She then told McCray that she would put it down as sending him for training, instead of a transfer. One month later, the assistant manager, who allegedly lacked training, was promoted to district manager (McCray affidavit, paragraph 16).

30-31. Ms. Lamberg had been on the job for 27 years and was performing her job competently. She was no worse than the majority of her peers. Nevertheless, Murphy was determined to justify getting rid of Lamberg, and told plaintiff to find things wrong with her and write her up. Ms. Lamberg was in her 60's. Plaintiff thought that Murphy's actions amounted to illegal age discrimination. He told Murphy that she was treating Lamberg in a disparate manner and writing her up for things that were ignored when done by other managers. McCray did not say at his deposition, page 87, that he believed that Murphy didn't like Lamberg, etc., that was what Murphy told McCray. Lamberg was eventually discharged (McCray affidavit, paragraph 17).

34. Plaintiff did not get the warning until August. He was issued the development plan, but there was no basis, other than a retaliatory one, for him to get the plan (McCray affidavit, paragraph 18).

35-36. The development plan says nothing about plaintiff performance being improved. It just referred to what he should do in the future. There were no problems with McCray's attendance, nor were there any attendance rules of the company which he violated. He worked well over 40 hours per week (McCray affidavit, paragraph 19).

37, 42. Plaintiff's reviews from the people attending the training were good. He was not late to the training. He did read (briefly) from the manual, but only where it was important to emphasize major points. He had never been told not to do this. Plaintiff did not complain about Block managers. He never failed to lock up personnel files and never left confidential information on his desk. He did come in early on Fridays, at 7 and there was no basis for Murphy claiming he did not comply with his schedule. Murphy never told McCray not to give work to the administrative assistant. The assistant had little to do and asked plaintiff to give her something to do (McCray affidavit, paragraph 20).

38. Murphy and Gill did not discuss these issues (mentioned in the previous paragraph) with plaintiff (McCray affidavit, paragraph 21).

39. All Block managers were not required to work every Saturday, only some Saturdays in tax season (McCray affidavit, paragraph 22).

40. Plaintiff did not refuse to work Saturdays, he only requested not to have to work them, because he could work from home, he had custody of his son on weekends, and the prior tax season, he did not have much to do on Saturdays. When Murphy told McCray that he had to work Saturdays, he complied. He only questioned this and did not act insubordinately (McCray affidavit, paragraph 23).

48. Plaintiff thought as of December, 2002, when he filed the complaint, that listing discrimination because of race, would also encompass a claim of retaliation. He wrote a lengthy summary of the retaliation when he filed his "rebuttal" with the MCAD (McCray affidavit, paragraph 24).

37, 42. Plaintiff's reviews from the people attending the training were good. He was not late to the training. He did read (briefly) from the manual, but only where it was important to emphasize major points. He had never been told not to do this. Plaintiff did not complain about Block managers. He never failed to lock up personnel files and never left confidential information on his desk. He did come in early on Fridays, at 7 and there was no basis for Murphy claiming he did not comply with his schedule. Murphy never told McCray not to give work to the administrative assistant. The assistant had little to do and asked plaintiff to give her something to do (McCray affidavit, paragraph 20).

38. Murphy and Gill did not discuss these issues (mentioned in the previous paragraph) with plaintiff (McCray affidavit, paragraph 21).

39. All Block managers were not required to work every Saturday, only some Saturdays in tax season (McCray affidavit, paragraph 22).

40. Plaintiff did not refuse to work Saturdays, he only requested not to have to work them, because he could work from home, he had custody of his son on weekends, and the prior tax season, he did not have much to do on Saturdays. When Murphy told McCray that he had to work Saturdays, he complied. He only questioned this and did not act insubordinately (McCray affidavit, paragraph 23).

48. Plaintiff thought as of December, 2002, when he filed the complaint, that listing discrimination because of race, would also encompass a claim of retaliation. He wrote a lengthy summary of the retaliation when he filed his "rebuttal" with the MCAD (McCray affidavit, paragraph 24).

49, 51-52. Before December 10, McCray told Francine Gill, that he had filed a complaint of discrimination with the MCAD. The meeting described in this paragraph did not happen. Since the meeting did not take place, the statements in paragraph 51 and 52 are untrue.

58. Murphy and Gill did attend the training, but not because of any prior complaints. After the training, plaintiff gave Ms. Gill a stack of favorable reviews from the trainees. Ms. Gill said she did not care what they say, you (McCray) were horrible. Plaintiff did not read the words "turn the page," nor did he fail to make any required logistical arrangements, lunch was taken care of (McCray affidavit, paragraph 26).

61. Plaintiff did not attend the training session because he was on FMLA leave for his foot problem. The MRI had nothing to do with his missing the training. He had the MRI at a later time (McCray affidavit, paragraph 27).

63. Plaintiff did not give the certification to Block until January 13. He was absent (as defendants admit) on the 10th (McCray affidavit, paragraph 28).

65. Plaintiff did not receive specific instruction to report to the training in Kansas City on the 13th. Moreover, had he attended, he would have been required to stand all day which he could not do because of his medial restrictions (McCray affidavit, paragraph 29).

67. Plaintiff flouted no work directives, nor did his performance deteriorate. He did meet with Ms. Murphy on January 14. The warning had Ms. Murphy's name on it, and cited things she allegedly observed. He did comply with the development plan, completed his work in a timely manner and reported his absences in the required fashion (McCray affidavit, paragraph 30).

69. Murphy did not tell plaintiff that Block was denying his FMLA leave for the surgery, because he did not give 30 days notice. There was no company rule regarding 30 days notice for surgery. Plaintiff scheduled the surgery for as soon as possible because it was painful for him to walk. The busy tax season did not start until February 1, and plaintiff planned on returning by that date (McCray affidavit, paragraph 69).

70. Plaintiff did not get hostile and agitated during the meeting. He was respectful and businesslike throughout the meeting. He did not stand up with fist raised and threaten Ms. Murphy. He did not say he would not comply with the terms of the written warning. He did not say he would take time off regardless of Block's decision (McCray affidavit, paragraph 32).

74. Murphy did not call plaintiff, on or about January 20. He received a letter in the mail, telling him that he was terminated (McCray affidavit, paragraph 33).

## II. Additional Material Facts

1. The only attendance or absenteeism rule of Block that Linda Murphy could cite, is that an employee cannot be absent more than 3 days without furnishing a doctor's note (Murphy deposition, pages 11, 29).

2. Plaintiff was discharged for absenteeism and insubordination, the insubordination being his alleged threatening behavior towards Murphy at the January 14, 2003 meeting (Murphy deposition, pages 29-30).

3. Murphy played a substantial role in plaintiff's termination. First, she reported plaintiff's alleged violent and insubordinate actions to Francine Gill, following the January 14 meeting. Second she spoke to corporate counsel and rendered her opinion regarding whether or not plaintiff should be discharged (Murphy deposition, pages 27, 31, 35).

4. Plaintiff was first given the development plan at the January 14 meeting, which meeting took place after he filed his MCAD complaint (Murphy deposition, page 35).

5. At the January 14 meeting, plaintiff showed Murphy a doctor's note relative to his foot problem, which note indicated plaintiff would have to miss a few weeks of work because of such problem. Murphy read the note and gave it back to plaintiff, not keeping a copy (Murphy deposition, page 36).

6. Murphy claims Gill told her that plaintiff's application for FMLA leave was denied because it was peak tax season (not for medical reasons). Murphy, however, identified Gill's signature on McCray deposition exhibit 15 (Defendants' tab 34, attached to the Belli affidavit). This document indicates that Block had approved plaintiff's FMLA request for the period of January 6 to at least January 23 (Murphy deposition, pages 44-45, McCray deposition exhibit 15). Murphy testified that she thought plaintiff's surgery was elective because it was not life threatening (Murphy deposition, page 47).

Date: 12-8-05

Adrian McCray
By his attorney,

/s/ Paul A. Manoff
Paul A. Manoff
47 Winter Street, #4
Boston, MA 02108
(617) 542-4620
BB0# 318220

### CERTIFICATE OF SERVICE

I, Paul A. Manoff, hereby certify that on December 8, 2005 I served a copy of the above document on the defendants by mailing a copy, first class, postage prepaid to Adrienne M. Markham, Goulston & Storrs, 400 Atlantic Avenue, Boston, MA 02110.

Date: 12-8-05

/s/ Paul A. Manoff
Paul A. Manoff

mccray\statfact