UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 DEC -8  P  1: 46

U.S. DISTRICT COURT
DISTRICT OF MASS.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ADRIAN MCCRAY,                                                    \*
                                                                          \*
                    Plaintiff                                        \*
                                                                          \*
v.                                                                      \*    **C.A. NO. 04-CV-12232-PBS**
                                                                          \*
H&R BLOCK EASTERN ENTERPRISES, INC.      \*
and LINDA MURPHY,                                          \*
                                                                          \*
                    Defendants                                     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### AFFIDAVIT OF ADRIAN MCCRAY

I, Adrian McCray, hereby depose and say as follows:

1. I am the plaintiff in the above action.

2. I was hired by both defendant Linda Murphy and Francine Gill and interviewed with both of them.

3. Linda Murphy initiated disciplinary actions against me as well as others reporting to her in an operations capacity. Francine Gill did not have to sign off on any discipline against me or others, if it was an operations issue, and not a human resources performance issue.

4. We were not required to enter any major employee relations issue in the clarify system. We had the option to do so, but the software had glitches and was not always operational. I was never directly told that I was required to use it in all circumstances.

5. Defendants made no criticism of my job performance, either oral or written, prior to May 1, 2002. I was not told I had to enter all issues in the clarify system nor did I fail to produce any required reports. I was not absent or tardy on numerous occasions with last minute notice. There is no documentation of any deficiencies during this period (August 2001-May, 2002).

6. The evaluation of May, 2002 came only after I protested what I thought were Murphy's illegal and discriminatory actions relative to the complaint of Paul Rogers (see below). At the time of my protest, Ms. Murphy told me that any time she wanted to make a case against someone, she could and would, to get him fired. She also said that anyone who makes a negative statement about her son-in-law, she would get. I contend that these comments, together with my record of fine job performance, prior to May, 2002, show that my May, 2002 evaluation was specious and was done to retaliate against me for my opposition to how I handled the Rogers matter. Ms. Murphy signed the evaluation and had input into it. She was higher in the Block organization then was Gill.

7. All I meant in my testimony was that I was not perfect and there is always room to improve. I performed my job in a more than adequate manner and exceeded my employer's expectations. I meant by "rigid and inflexible" that I followed the rules. I did not admit that I was not "meeting expectations" regarding my reports. I only indicated at my deposition that my reports could have contained more information. I did not concede that I was not following my instructions or Block's expectations.

8. I told Ms. Gill and Ms. Murphy in advance that I was taking May 24 as an additional vacation day. They approved of my taking that day off.

9. The contracts at issue were not due until I returned from vacation. I intended to work on them when I returned and did so when I returned from vacation. There was no work that I was required to complete before my vacation, that I failed to complete.

10. I was not given this warning until August, 2002, even though it has a date of May 31 on it. The warning was given to me in August by Murphy and Gill.

-2-

11. The complaint was not merely that Bartlett failed to take appropriate action, but also that Bartlett directly discriminated against Rogers because of his sexual orientation.

12. The majority of employees that I interviewed did support Rogers' claim.

13. Murphy did tell me that my report should ensure that Bartlett was not found to have done anything wrong, but she never told me she believed Bartlett.

14. Had I not had the conversation with Ms. Murphy, previously referenced, I would emphasized the testimony of different witnesses and written a different conclusion, which would have supported Rogers' complaint. After I wrote the report in a way to please Murphy, I told her in no uncertain terms that in the future I would not write any more fraudulent reports which did not comport with my findings.

15. Murphy did not do anything to encourage Gross to take FMLA leave. It was my idea that he take such leave. She expressed concerns that he was missing work.

16. Murphy at first did not send the assistant for additional training, nor did he lack sufficient experience. Rather, Murphy transferred the assistant to a different district so that Gross would have to come back from leave. I told Murphy that it was wrong to transfer the assistant, to force Gross to end his FMLA leave. She then told me that she would put it down as sending him for training instead of a transfer. One month later, the assistant manager, who allegedly lacked training was promoted to district manager.

17. Ms. Lamberg had been on the job for 27 years and was performing her job competently. She was no worse than the majority of her peers. Nevertheless, Murphy was determined to justify getting rid of Lamberg, and told me to find things wrong with her and write her up. Ms. Lamberg was in her 60's. I thought that Murphy's actions amounted to illegal age discrimination. I told Murphy that she was treating Lamberg in a disparate manner and writing

-3-

her up for things that were ignored when done by other managers. I did not say at my deposition, page 87, that I believed that Murphy didn't like Lamberg, etc. that was what Murphy told me. Lamberg was eventually discharged.

18. I did not get the warning until August. I was issued the development plan, but there was no basis, other than a retaliatory one, for me to get the plan.

19. The development plan says nothing about my performance being improved. It just referred to what I should do in the future. There were no problems with my attendance. Nor were there any attendance rules of the company which I violated. I worked well over 40 hours per week.

20. My reviews from the people attending the training were good. I was not late to the training. I did read (briefly) from the manual, but only where important to emphasize major points. I had never been told not to do this. I did not complain about Block managers. I never failed to lock up personnel files and never left confidential information on my desk. I did come in early on Fridays, at 7 and there was no basis for Murphy claiming I did not comply with my schedule. Murphy never told me not to give work to the administrative assistant. The assistant had little to do and asked me to give her something to do.

21. They did not discuss these issues (mentioned in the previous paragraph) with me.

22. All Block managers were not required to work every Saturday, only some Saturdays in tax season.

23. I did not refuse to work Saturdays, only requested not to have to work them, because I could work from home, I had custody of my son on weekends, and the prior tax season, I did not have much to do on Saturdays. When Murphy told me that I had to work Saturdays, I complied. I only questioned this and did not act insubordinately.

-4-

24. I thought as of December, 2002, when I filed the complaint, that listing discrimination because of race, would also encompass a claim of retaliation. I wrote a lengthy summary of the retaliation when I filed my "rebuttal" with the MCAD.

25. Before December 10, I told Francine Gill, that I had filed a complaint of discrimination with the MCAD. The meeting described in this paragraph did not happen. Since the meeting did not take place, the statements in paragraph 51 and 52 are untrue.

26. Murphy and Gill did attend the training, but not because of any prior complaints. After the training, I gave Ms. Gill a stack of favorable reviews from the trainees. Ms. Gill said I don't care what they say, you were horrible. I did not read the words "turn the page," nor did I fail to make any required logistical arrangements, lunch was taken care of.

27. I did not attend the training session because I was on FMLA leave for my foot problem. The MRI had nothing to do with my missing the training. I had the MRI at a later time.

28. I did not give the certification to Block until January 13. I was absent (as defendants admit) on the 10th.

29. I did not receive specific instruction to report to the training in Kansas City on the 13th. Moreover, had I attended, I would have been required to stand all day which I could not do because of my medial restrictions.

30. I flouted no work directives, nor did my performance deteriorate. I did meet with Ms. Murphy on January 14. The warning had Ms. Murphy's name on it, and cited things she allegedly observed. I did comply with the development plan, completed my work in a timely manner and reported my absences in the required fashion.

31. Murphy did not tell me that Block was denying my FMLA leave for the surgery, because I did not give 30 days notice. There was no company rule regarding 30 days notice for surgery. I scheduled the surgery for as soon as possible because it was painful for me to walk. The busy tax season does not start until February 1, and I planned on returning by that date.

32. I did not get hostile and agitated during the meeting. I was respectful and businesslike throughout the meeting. I did not stand up with fist raised and threaten Ms. Murphy. I did not say I would not comply with the terms of the written warning. I did not say I would take time off regardless of Block's decision.

33. Murphy did not call me, on or about January 20. I received a letter in the mail, telling me I was terminated.

Signed under the pains and penalties of perjury this 22nd day of November, 2005.

Adrian McCray

mccray\affmccray